```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

CASHMAN EQUIPMENT CORPORATION                CIVIL ACTION

VERSUS                                       NO: 12-945

SMITH MARINE TOWING                          SECTION: R
CORPORATION

## ORDER AND REASONS

Before the Court are plaintiff's motion for partial summary judgment on its claims[1] and defendant's motion for summary judgment on its counterclaim against plaintiff.[2] For the following reasons, the Court DENIES both motions.

## I.   BACKGROUND

This dispute concerns the charter hire agreements between the parties. For years, plaintiff Cashman Equipment Corporation has chartered tugs from defendant Smith Marine Towing Corporation, and defendant has chartered barges from plaintiff. In October 2011, the parties executed a bareboat charter agreement for plaintiff's barge called the JMC 2508.[3] The charter established that the fee for the vessel would be "$2,200 per day

---

[1]   R. Doc. 10.

[2]   R. Doc. 14.

[3]   R. Doc. 10-2.

without set off, beginning on October 11, 2011."[4] The charter also stated that after an irrevocable term of thirty days, the agreement would continue until the vessel was returned to plaintiff.[5] Upon expiration of the initial thirty-day period, plaintiff "reserve[d] the right to adjust the charter hire rate at [its] sole discretion."[6]

Plaintiff issued its first invoice on October 11, 2011[7] and three days later demanded the return of the vessel.[8] Defendant sent plaintiff a check for partial payment, due to its understanding that defendant's president, Kirk Smith, and plaintiff's president, James Cashman, had previously agreed that defendant could set off the charter fees against debts owed by plaintiff to defendant for earlier charter hire.[9] Plaintiff issued a second invoice on October 16, 2011, of which defendant again paid a portion.[10]

Plaintiff then sent letters informing defendant that the fees could not be set off and that if the vessel were not

---

[4]  R. Doc. 10-2 at 1.

[5]  *Id.*

[6]  *Id.*

[7]  *Id.* at 7.

[8]  *Id.* at 21.

[9]  R. Doc. 14-2 at 49-50.

[10] R. Doc. 10-2 at 8.

returned, the fee would increase to $5,000 per day, following the expiration of the initial thirty-day period.[11] Plaintiff continued to increase the charter rate, informing defendant that after December 1, 2011, it would increase by $1,000 each day that the vessel remained in defendant's possession.[12] The barge did not return to plaintiff's possession until February 2, 2012, and thus plaintiff claims that defendant owes $2,546,433.53 in fees.

On April 13, 2012, plaintiff filed suit in this Court to recover the charter fees owed and other damages resulting from defendant's breach of contract.[13] Defendant filed a counterclaim against plaintiff and a third-party complaint against Servicio Marina Superior, L.L.C. ("SMS"), claiming that the two entities owe outstanding charter fees for the hire of defendant's vessels.[14] Plaintiff filed for partial summary judgment on the issues of whether defendant breached the charter party for the JMC 2508 and thus owes the amount invoiced by plaintiff.[15] Defendant seeks summary judgment on its counterclaim.[16]

---

[11]   R. Doc. 10-2 at 26, 29.

[12]   *Id.* at 32.

[13]   R. Doc. 1.

[14]   R. Doc. 4.

[15]   R. Doc. 10.

[16]   R. Doc. 14.

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or

"showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. DISCUSSION**

    **A. Plaintiff's Motion for Summary Judgment**

Plaintiff contends that no factual questions remain as to whether defendant violated the terms of the bareboat charter and thus owes outstanding fees. The charter states that controversies that arise shall be governed by general maritime law, insofar as

applicable, and otherwise by Louisiana law.[17] Both parties rely primarily on cases involving Louisiana law, which states that if the words of a contract are clear, explicit, and lead to no absurd consequences, the Court must determine the intent of the parties based on the words of the contract. La. Civ. Code Ann. art 2046.

The parties dispute the amount owed for the charter of the JMC 2508 and the payment arrangement. The charter party set the rate of hire at $2,200 per day and states that "[u]pon expiration of the initial terms of the contract, [Cashman] reserves the right to adjust the charter hire rate at [Cashman's] sole discretion."[18] Defendant asserts that the clause is ambiguous, because to allow plaintiff to raise the rates without limits leads to absurd results such as plaintiff's increase of the charter rate from $2,200 to $69,000 per day during a period of time in which defendant had already committed to a job involving the vessel.

In interpreting the language at issue, the Court reads the contract as a whole. *See, e.g., Louisiana Land & Exploration Co. v. Offshore Tugs Inc.*, 23 F.3d 967, 969 (5th Cir. 1994). The Court finds that the charter's language discussing the initial irrevocable term and the ensuing indefinite period reflects the

---

[17]   R. Doc. 10-2 at 5.

[18]   *Id.* at 1.

parties' understanding that the vessel would likely remain with defendant longer than thirty days. Thus, to interpret as limitless plaintiff's ability to raise the charter rate after this initial period renders the provision incongruous with the rest of the paragraph. Such an interpretation would give plaintiff the ability to charge any charter hire, with defendant unable to return the vessel immediately to avoid the higher rates given the nature of its business. *See* La. Civ. Code Ann. art 2046 (identifying "absurd consequences" as a reason for which interpretation may be made beyond the words of a contract).

Moreover, the Court finds that the word "adjust" is ambiguous. Plaintiff insists that the phrase "reserves the right to adjust the charter hire rate at [Cashman's] sole discretion" bestows upon it the ability to select any rate. But, the word "adjust" is defined as "to change so as to fit, conform, make suitable" and "to make accurate by regulating." *Webster's New World College Dictionary* (4th ed.). This definition suggests a modification to account for changing circumstances, which implies a limit on plaintiff's ability to raise the rate. Defendant's argument that the provision was meant to allow plaintiff to account for market conditions rather than to raise the charter hire fee to any amount is a reasonable reading of the language. *See, e.g., Am. Druggists Ins. Co. v. Henry Contracting, Inc.,* 505 So.2d 734, 737 (La. Ct. App. 1987) (contract is ambiguous "when

it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances"). Therefore, it is not at all clear that the provision bestowed upon plaintiff the discretion to increase by any amount the charter rate.

The Court also finds the payment arrangement between the parties to be ambiguous. The charter states that the charter hire rate was "$2,200 per day without set off"[19] and includes an integration clause indicating that any arrangements made between the parties before the charter's execution were superseded.[20] But, defendant argues that this language conflicts with the parties' earlier course of dealings, in which the companies' presidents agreed to set offs despite the prohibition of such arrangements in their charter party forms.[21] Plaintiff denies that this payment structure extended to the charter of the JMC 2508.[22]

"[A] course of dealing generally supplies terms for ambiguous, silent, or incomplete contracts." *Safeco Ins. v. Rehab. Spec.*, 20 F.3d 1170 (5th Cir. 1994). Although set offs are addressed in the charter party, defendant presents evidence that

---

[19]   R. Doc. 10-2 at 1.

[20]   *Id.* at 5.

[21]   R. Doc. 14-2 at 2, 20, 26, 30, 34 ,39.

[22]   R. Doc. 31-1.

the parties routinely ignored the terms of their written contracts throughout their extensive dealings. Thus, whether the provision was meant to be enforced as written at the time the charter was executed is ambiguous, particularly in light of the different accounts provided by the parties as to the oral agreements in place. Moreover, because the Court finds that the charter's provision regarding rate increases is ambiguous, the issue of whether defendant breached the charter party remains in question. The Court thus finds that summary judgment is not warranted.

### B. Smith Marine's Motion for Summary Judgment

Defendant moved for summary judgment on its counterclaim, which states that plaintiff and its partner SMS owe fees for the charter of defendant's tugs. Defendant asserts that it entered into oral contracts for charter hire with plaintiff between May 2007 and July 2009.[23] In his affidavit, Kirk Smith stated that according to the parties' agreement, SMS, plaintiff's affiliate company, was to be invoiced for the hire.[24] He identified the total amount owed to defendant as $815,873.45.[25] Defendant contends that after applying the set offs discussed above, including the payments made on the October 2011 invoices for the

---

[23] R. Doc. 14-2 at 2.

[24] *Id.*

[25] *Id.*

9

JMC 2508, plaintiff now owes defendant $568,292.47, in addition to interest.

Plaintiff presents affidavits from its employees that dispute all of these contentions by defendant, including the assertion that plaintiff bears any responsibility for debts incurred by SMS.[26] In light of the differing accounts, the Court finds that questions of material fact exist as to the central issues at stake, namely the agreements executed by the parties for the charter of defendant's tugs, the repayment structure for outstanding debts set up by the parties, and any amount owed to defendant by plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the motions for summary judgment are DENIED.

New Orleans, Louisiana, this 21st day of February, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[26] R. Docs. 29-3; 31-1.